IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| J. P., as parent and next friend of A.W., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:19cv636-MHT (WO) |
| ELMORE COUNTY BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff J.P. filed the present suit against
defendant Elmore County Board of Education on behalf of
her son A.W., who is deaf and whose ability to
communicate is very limited.  J.P.'s suit follows two
due-process proceedings she brought against the Elmore
County school district[1] under the Individuals with
Disabilities Education Act (IDEA), 20 U.S.C. § 1400.

_____

1.  According to the complaint, the Elmore County
Board of Education is the "state governmental entity
that bears exclusive responsibility for the operation,
management, and control of the Elmore County school
district."  Amended Complaint (Doc. 6) at ¶ 3; *see also*
Answer to Amended Complaint (Doc. 12) at ¶ 3 (admitting
same).

The first ended with a settlement agreement adopted as an order by the IDEA hearing officer, which mandated various changes to the services A.W. received from the district and the district's obligations towards him. The second ended with an order by the same hearing officer finding that the district had breached the settlement agreement and denied A.W. the free appropriate public education (FAPE) that the IDEA promises to children with disabilities. *See* 20 U.S.C. § 1412(a)(1). The hearing officer instructed the district to comply with the prior settlement agreement and imposed several additional requirements for A.W.'s education.

The complaint in this case seeks damages from the school board under the Americans with Disabilities Act, 42 U.S.C. § 12101, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, for what J.P. alleges was intentional discrimination against her son because of his disabilities. In the second count of the complaint, J.P. also seeks attorneys' fees under

2

the IDEA, 20 U.S.C. § 1415(i)(3)(B), for counsel's time spent litigating the two underlying due-process proceedings.  The court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 794a (Section 504), and 20 U.S.C. § 1415(i)(3)(A) (IDEA).

This suit is now before the court on J.P.'s motion for partial summary judgment on count II: her claim for attorneys' fees.  For the reasons below, the court will grant J.P.'s motion and find that she was the prevailing party in both due-process proceedings.  However, the court at this juncture will not resolve the parties' arguments regarding the reasonableness of counsel's billed hours, hourly rates, and other disputes about what fees are reasonable in this case.  Instead, the court will enter judgment in favor of J.P. on the attorneys' fees count and will request clarification from J.P. regarding the precise amount of fees sought in this case and the billing hours for which reimbursement is requested.

## I.   SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.   The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.*

## II.   FACTUAL AND PROCEDURAL BACKGROUND

According to the hearing officer who presided over both of the underlying due-process proceedings, A.W. was 12 years old at the time of the latter proceeding

4

and had "multiple disabilities," including hearing impairment.  Hearing Decision, Special Educ. Case 19-05 (Doc. 31-2) at 12.[2]  He can "trace simple words, write his name, say 'I am hungry,' and can indicate a need to use the bathroom."  *Id.* at 18.  His facility with sign language is "very limited"; a sign-language interpreter testified during the proceeding "that she was essentially unable to communicate with him" and was "unable to make any progress."  *Id.*

Also, A.W. by that point had a long history of behavioral difficulties: intermittent outbursts that had become increasingly aggressive in the years before his mother's first due-process complaint.  *See id.* at 12-13.  In response to these behaviors, the team that had been assembled to establish and review his individualized education program, or IEP, *see* 20 U.S.C.

---

2.  Because neither party disputes the accuracy of the hearing officer's findings, and because both parties included the officer's decision in their evidentiary submissions, *see* Hearing Decision (Doc. 26-32 & Doc. 31-2), the court accepts the findings made in that decision as true for the purposes of adjudicating the present motion.

§ 1414(d), met in late 2017 and decided to place A.W. on "homebound services" for the following quarter of the 2017-18 academic year.  Hearing Decision, Special Educ. Case 19-05 (Doc. 31-2) at 13.  Such "homebound" instruction refers to a "one-on-one program where the homebound child is placed into a classroom alone with one teacher"--it need not refer literally to instruction in the student's home.  *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 509 n.4 (11th Cir. 1990).  And because the IDEA instructs that children with disabilities should be educated in the "least restrictive environment" possible, students generally should not be required to receive education at their homes rather than at school unless the latter option is infeasible.  *See* 20 U.S.C. § 1412(a)(5); 34 C.F.R. §§ 300.114, 300.116(c).

J.P. filed her first due-process complaint against the district in response to the decision of A.W.'s IEP team to place him on homebound instruction.  Her complaint sought a one-to-one aide for A.W. during

normal school hours, whether he was educated at school or at home; assessments of A.W. and appropriate IEP revisions; compensatory education for A.W. to make up for the time the complaint alleged he had spent receiving insufficient instruction; and other remedies. *See* Request for Expedited Due Process and Pendency Order (Doc. 26-2) at 10-13.   J.P. later amended her complaint with requests for several additional assessments, counseling, and a more detailed list of proposed compensatory education.   *See* Amended Request for Due Process Hearing and Pendency Order (Doc. 26-4 & Doc. 31-4) at 8-11.

This complaint yielded a settlement agreement between the parties that was adopted by the hearing officer as an order in April 2018.   *See* Settlement Agreement and Order, Special Educ. Case 17-149 (Doc. 31-1) at 4.   Under that agreement and order, the school district was obligated to provide A.W. with an interpreter for the full school day "within a reasonable period of time," and a one-to-one aide in

the meantime. *Id.* at 5. The district was also
required to conduct various evaluations of A.W.'s
capacities and needs, including the "functional
behavior assessment" sought by the due-process
complaint. *Id.* at 8; *see also* Request for Expedited
Due Process and Pendency Order (Doc. 26-2) at 10. If
A.W.'s IEP team determined that homebound services were
the appropriate placement for him, the agreement
required that those services "be provided to [A.W.] at
a school or school district facility." Settlement
Agreement and Order, Special Educ. Case 17-149 (Doc.
31-1) at 6-7. And J.P. agreed to release the district
"from any and all claims, charges or complaints"
related to "claims that were or could have been
included as part of this due process matter." *Id.* at
8.

That fall, shortly after the school year began,
there were two incidents in which A.W. became
aggressive with district staff. *See* Hearing Decision,
Special Educ. Case 19-05 (Doc. 31-2) at 14-16. As a

result, his IEP team met and decided to change A.W.'s placement back to a homebound placement, with A.W. attending school for one hour each day and spending the remainder of the school day at home. *See id.* at 16. As the hearing officer found, "Aside from the Child's behavior being difficult for the District to manage, the District provide[d] little rationale supporting the decision to change the Child's [placement] to a homebound placement." *Id.* at 17.  Moreover, J.P. is a single mother who works during the day, so this placement meant that A.W. had to spend his days with a relative who lived outside the district. *See id.* at 16-17.  As a result, because there was no home within the district where A.W. could receive educational services, the district refused to schedule any education for him at all. *See id.* at 17-18.

This led to J.P.'s second due-process complaint and the hearing officer's finding that the district had "breached the Settlement Agreement and violated [the] April 5, 2018 Order when the District attempted to

place the Child in a homebound placement and refused to provide the homebound services at a school or school facility for more than one hour per day." *Id.* at 20. The hearing officer found that, in changing A.W.'s placement to homebound and offering those services at school for only one hour per day, the district had "decided to ignore the key provisions of the Settlement Agreement and Order." *Id.* at 21. As a result, the hearing officer found that A.W. had "suffered a denial of FAPE," and the officer ordered the district to comply with the settlement agreement, gather the IEP team to re-assess A.W.'s placement, and provide certain compensatory education and other services. *Id.* at 22-24. The present suit was filed several months later.

III.  DISCUSSION

A. Resolution of Fees on Summary Judgment

As a preliminary matter, there is a dispute between the parties as to whether a motion for summary judgment

is the appropriate filing by which to address whether and what fees are due to J.P.'s counsel.  The school board urges the court not to consider the summary-judgment motion at all and says that J.P. instead "is required to file a fee petition."  Response to Motion for Summary Judgment (Doc. 30) at 1.  J.P. says that summary judgment "is an appropriate procedure for IDEA fees earned as a result of underlying due process administrative proceedings," and she argues that fees may be awarded on such motion, citing another case from this district in which fees were ostensibly awarded "on summary judgment."  Reply in Supp. Motion for Summary Judgment (Doc. 37) at 2 (citing *J.S.R. ex rel. Childs v. Dale Cnty. Bd. of Educ.*, No. 1:13-cv-582-WKW, 2016 WL 79986 (M.D. Ala. Jan. 6, 2016) (Watkins, C.J.)).

The IDEA provides a cause of action for plaintiffs to bring suit for attorneys' fees for work performed in the course of underlying due-process proceedings.  *See, e.g.*, *Zipperer ex rel. Zipperer v. Sch. Bd. of Seminole*

*Cnty.*, 111 F.3d 847, 851 (11th Cir. 1997). In an action for IDEA attorneys' fees based on underlying due-process proceedings that is brought as a suit independent from the underlying proceedings--rather than in the course of an appeal from those proceedings--the district court sits in its capacity as a trial court to hear the suit, by contrast to the quasi-appellate capacity in which it reviews the decisions of IDEA hearing officers. *See Ga. State Dep't of Educ. v. Derrick C.*, 314 F.3d 545, 550-51 (11th Cir. 2002).

Summary judgment is an appropriate procedural posture at which to resolve an independent cause of action for IDEA attorneys' fees. *See, e.g.*, *Blount Cnty. Bd. of Educ. v. Bowens*, 762 F.3d 1242, 1246-48 (11th Cir. 2014). On a summary-judgment motion, the court may determine whether the plaintiff is entitled to fees--for instance, by adjudicating whether the plaintiff was the prevailing party in the underlying proceedings. *See, e.g.*, *Robert v. Cobb Cnty. Sch.*

*Dist.*, 279 F. App'x 798, 801 (11th Cir. 2008).

As to whether summary judgment is an appropriate posture at which to resolve the amount of fees that may be due, the authorities are mixed.  In general, motions for fees come under Rule 54 of the Federal Rules of Civil Procedure, which requires that "[a] claim for attorney's fees ... must be made by motion," which should be filed "no later than 14 days after the entry of judgment."  Fed. R. Civ. P. 54(d)(2).  This court has at times taken that approach--deciding a summary-judgment or other dispositive motion to determine entitlement to fees, followed by a motion for fees under the Federal Rules of Civil Procedure--in resolving claims for attorneys' fees under the IDEA. *See, e.g.*, *W.T. ex rel. Tatum v. Andalusia City Schs.*, 977 F. Supp. 1437, 1446-47 (M.D. Ala. 1997) (Thompson, C.J.).  Moreover, that was the approach taken by then-Chief Judge Watkins in the only case J.P. cites for the proposition that the amount of fees due should be adjudicated on a summary judgment motion rather than

13

a motion under Rule 54. *See J.S.R. ex rel. Childs v. Dale Cnty. Bd. of Educ.*, No. 1:13-cv-582, 2015 WL 5692804, at \*15 (M.D. Ala. Sept. 28, 2015) (Watkins, C.J.) (granting summary judgment on fee claim); *see also J.S.R.*, 2016 WL 79986, at \*1 (resolving subsequent motion for attorneys' fees).

In other cases, however, this court has simultaneously resolved the merits of an IDEA claim for attorneys' fees and the amount of fees due. *See, e.g.*, *Doucet ex rel. Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1264 (M.D. Ala. 1999) (Thompson, J.). Other courts faced with similar claims have taken this approach as well. *See, e.g.*, *Jones v. District of Columbia*, No. 15-155 (BAH), 2015 WL 5093559, at \*2 (D.D.C. Aug. 18, 2015) (Howell, J.). Although the procedural posture therefore does not prevent the court from determining the appropriate fees, J.P.'s filings regarding the hours and hourly rates requested are sufficiently unclear that the court is not well positioned to adjudicate at present the amount of fees

14

that should be awarded.  To proceed as efficiently as possible while narrowing the issues under dispute, the court therefore will resolve today the question of J.P.'s entitlement to fees, and it will request clarification from J.P. as to the amount of fees she believes are due.

## B. Entitlement to Fees

In an action for attorneys' fees under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees ... to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B).  The hearing officer in the underlying proceedings found that A.W. is a child with a disability, and the school board does not argue otherwise.  *See* Hearing Decision, Special Educ. Case 19-05 (Doc. 31-2) at 12.  Nor does the board dispute that J.P. was the prevailing party in the second due-process proceeding.  *See* Response to Motion for Summary Judgment (Doc. 30) at 9 ("Defendant does not

15

dispute that Plaintiff is entitled to some attorneys'
fees resulting from Special Education Case 19-05....").
However, the board makes two arguments relevant to the
current matter: that J.P. did not achieve prevailing
party status in the first due-process proceeding, and
that J.P. waived her right to seek attorneys' fees for
that proceeding in the release provision of the
settlement agreement. *See id.* at 5-8. The court will
address each argument in turn.


## 1. Prevailing Party Status

To obtain prevailing party status, parties need not
succeed on every objective of their suits. As a
general rule, "a 'prevailing party' is one who has been
awarded some relief by the court." *Buckhannon Bd. &
Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598, 603 (2001). Parties may prevail through
court adjudication of the merits of their claims or
through a settlement agreement enforced by court order,
so long as the agreement "change[s] the legal

16

relationship between [the plaintiff] and the defendant." *Id.* at 604 (second alteration in original) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). The Eleventh Circuit Court of Appeals has held specifically that "the incorporation of the settlement into a court order" is "sufficient judicial imprimatur ... [to] allow for an award of attorney's fees." *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003).

Once a plaintiff has "crossed the 'statutory threshold' of prevailing party status," all that is left to determine is the appropriate amount of the fee. *Tex. State Teachers Ass'n*, 489 U.S. at 789. For a plaintiff who obtains limited relief, "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Id.*

As noted above, the first due-process proceeding

17

concluded with a settlement agreement that was entered
by the hearing officer as an order. *See* Settlement
Agreement and Order, Special Educ. Case 17-149 (Doc.
31-1) at 4.   This agreement obligated the district to
provide A.W. with an interpreter for the full school
day and a one-to-one aide until the interpreter could
be put in place. *See id.* at 5.   It also required that
the district conduct various assessments of A.W.,
including a functional behavior assessment. *See id.* at
7-8.   And it mandated that, if A.W.'s IEP team decided
that homebound services were necessary, those services
should be provided at a school facility. *See id.* at
6-7.

These remedies constitute a significant part of the
relief that J.P. sought in her due-process complaint in
that proceeding. *See* Request for Expedited Due Process
and Pendency Order (Doc. 26-2) at 10 (seeking, *inter
alia*, one-to-one aide and functional behavior
assessment); *see also* Amended Request for Due Process
Hearing and Pendency Order (Doc. 26-4 & Doc. 31-4) at

8-9 (seeking additional evaluations and assessments). They do not, of course, cover the entirety of the relief she sought; perhaps most notably, they do not include the compensatory education she requested. But the board's position that J.P. "obtained only assessments and evaluations" simply misstates the scope of relief encompassed by the parties' settlement agreement.  Response to Motion for Summary Judgment (Doc. 30) at 7.  The agreement required the district to provide A.W. with a full-day interpreter or one-to-one aide, and it forbade the district from putting A.W. into a homebound placement at his home rather than at a school facility.  The latter relief appears especially significant in light of the fact that the location of A.W.'s homebound placement and the resulting lack of services was what prompted J.P.'s complaint in the first place.

Accordingly, the court finds that the settlement agreement and accompanying order of the hearing officer constitute a "judicially sanctioned change in the legal

relationship of the parties." *Buckhannon*, 532 U.S. at 605. J.P. therefore "crossed the 'statutory threshold' of prevailing party status" as to the first due-process proceeding, regardless whether the extent of the remedies she achieved in the settlement agreement entitle her to a full award of attorneys' fees. *Tex. State Teachers Ass'n*, 489 U.S. at 789-90. Unless some other reason exists why she should not receive attorneys' fees for that proceeding, she is entitled at least to a partial fee award.

### 2. Waiver

The school board argues that J.P. should not receive fees on the first due-process proceeding even if she was the prevailing party because, it says, she waived any fee claims she may have had in the release provision of the settlement agreement. *See* Response to Motion for Summary Judgment (Doc. 30) at 5. In relevant part, the release clause at issue waives "any and all claims, charges or complaints ('claims') in any

20

way relating to ... claims that were or could have been included as part of this due process matter." Settlement Agreement and Order, Special Educ. Case 17-149 (Doc. 31-1) at 8.

The attorneys' fees provision of the IDEA permits a court to "award reasonable attorneys' fees as part of the costs" to, *inter alia*, a parent who prevails in an underlying due-process proceeding. 20 U.S.C. § 1415(i)(3)(B)(i). This statutory language presents a problem for the board's interpretation of the settlement agreement because it defines attorneys' fees not as a claim, a charge, or a complaint, but instead as "part of the costs" arising from the underlying proceeding. *Id.* The release clause at issue here is broadly written, but it does not expressly address either attorneys' fees or the "costs" of the underlying action.

Although the Eleventh Circuit Court of Appeals has not weighed in on the question, other federal courts of appeals have held that a release clause must expressly

21

preclude future actions for attorneys' fees for such actions to be foreclosed. *See Lima v. Newark Police Dep't*, 658 F.3d 324, 329-30 (3d Cir. 2011). And in the closely related context of judgment offers under Rule 68 of the Federal Rules of Civil Procedure, the Eleventh Circuit has held that awards of attorneys' fees are not foreclosed if the offer of judgment is "silent as to costs" and "the underlying statute defines 'costs' to include attorney's fees." *Arencibia v. Miami Shoes, Inc.*, 113 F.3d 1212, 1214 (11th Cir. 1997). As the Eleventh Circuit has explained in that context, a party accepting a judgment offer "cannot be deemed to have ... waived the right to seek" attorneys' fees "absent a clear indication to the contrary." *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1244 (11th Cir. 2002). The court does not see why a plaintiff accepting a settlement offer without a judgment provision should be differently positioned as to the effects of that offer on their potential to collect attorneys' fees than a

plaintiff accepting a Rule 68 offer of judgment.

Moreover, under Alabama law, a court should construe an ambiguous contract provision to "express the intent of the parties." *Kelmor, LLC v. Ala. Dynamics, Inc.*, 20 S. 3d 783, 791 (Ala. 2009) (quoting *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 216 (Ala. 2001)).  The court will not presume that the parties intended to preclude attorneys' fees in a provision that by its terms forecloses neither fees nor costs.  *Cf. W.L.G. v. Houston Cnty. Bd. of Educ.*, 975 F. Supp. 1317, 1322-23 (M.D. Ala. 1997) (Thompson, J.) (finding waiver of fees in IDEA suit because agreement "expressly provide[d] for a release of costs").


## C. Amount of Fees

The remaining issue before the court is the amount of fees that J.P. should be awarded.  As noted above, ambiguities in J.P.'s filings regarding the amount of fees due prevent the court from resolving that issue at this juncture.  *Compare, e.g.*, Decl. of Henry L.

23

Cassady, Jr. (Doc. 26-16) at 15 (requesting $ 32,692.53 for the first due-process proceeding), *with*, Cassady Billing Records, Special Educ. Case 17-149 (Doc. 26-18) at 139 (indicating total of $ 33,171.90 for that proceeding).  The court will therefore request certain clarifications from J.P. before resolving what fees are due.

* * *

Accordingly, it is ORDERED that:

(1) Plaintiff J.P.'s motion for partial summary judgment (Doc. 25) is granted to the extent that the court finds that plaintiff J.P. was the prevailing party in special education case nos. 17-149 and 19-05, and that she has not waived her right to seek attorneys' fees for either proceeding.

(2) On or before April 16, 2021, plaintiff J.P. should file a clarification of the total number of hours requested and total fee sought for the work of attorney Henry L. Cassady, Jr., on each of the special education cases listed above.  This clarification

24

should also provide a categorization of attorney Cassady's time entries similar to the categorization in his declaration, *see* Decl. of Henry L. Cassady, Jr. (Doc. 26-16) at 16-28, but including his entries for 0.1 hours and including <u>brief</u> indications of the content of each time entry listed under each category.

(3) Defendant Elmore County Board of Education may, if it chooses, file a response by April 23, 2021.

(4) Plaintiff J.P. may, if she chooses, file a reply by April 28, 2021.

(5) The issue of the amount of attorneys' fees is set for submission, without oral argument, on April 28, 2021.

DONE, this the 6th day of April, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE